IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,           )
                                    )
            Plaintiff,              )
                                    )
      v.                            )     No. 05 CR 254
                                    )
AMIR HOSSEINI and                   )
HOSSEIN OBAEI,                      )
                                    )
            Defendants.             )

## MEMORANDUM OPINION AND ORDER

Although this criminal case has been assigned to this Court's calendar from the time the indictment was returned, this Court inherited the case with conflicting detention and release orders that had been entered at the pre-indictment complaint stage: Its colleague Judge John Darrah had placed codefendant Amir Hosseini ("Hosseini") on home detention, while its colleague Judge Sam Der-Yeghiayan (who was then sitting as emergency judge) had reversed the release order as to codefendant Hossein Obaei ("Obaei") that Magistrate Judge Arlander Keys had issued after the evidentiary "Hearing," which comprised fully six hours. Not surprisingly, the government now seeks to take a second bite by asking for revocation of the release order as to Hosseini, while Obaei's counsel now makes the same effort as to his client.

When this Court first addressed the matter, it extended deference to both of those determinations, even though the only apparent difference in the situations of the two defendants was the government's assertion that Obaei had obtained his

citizenship many years ago in an illicit manner (something that has not been proved and is not implicated either in the original indictment or in the more recently returned 100-count (!) superseding indictment. Most recently, all the parties have concurred in the desirability of severing the defendants for trial, although the government initially explained its concurrence on the notion that a severance, with Obaei to be tried first, would shorten the length of his pretrial detention.

Offering up that limited carrot does the government little credit, for even on its own terms it is not really meaningful in light of the extended briefing schedule that this Court has had to establish as to any further motions that may be filed by reason of the return of the superseding indictment. This Court will instead address the conflicting motions for release or detention on their merits.

As for the government's effort to overturn Judge Darrah's release order regarding Hosseini, this Court continues to find persuasive the response by Hosseini's able counsel to the government's second motion for detention. Although that response provides chapter and verse in support of its position, it is really sufficient to quote its brief introduction (Response at 1):

> Defendant has been on home detention since July 1, 2005, and it has been an unqualified success. As verified by Pretrial Services, he has fulfilled every condition of his release and has presented no reason to

2

doubt his continued observance of all restrictions. The Government's alarmist warnings since the first day of this case that Hosseini would flee to Iran if he were released from custody have proven to be wrong. Nevertheless, the Government now reasserts those same baseless claims in their latest motion to the effect that "Hosseini will surely flee rather than face trial" (Motion at 1) and "[i]f given the opportunity, Hosseini will escape." (Motion at 13). The Court, however, will note that Defendant has had that "opportunity," such as it is, for over a month, and he is still here.

As for codefendant Obaei, this Court--like Judge Der-Yeghiayan before it--bases its current review on the Hearing record before Magistrate Judge Keys. After careful analysis of that record, this Court finds that deference is not a sufficient reason to conform to Judge Der-Yeghiayan's reversal of Magistrate Judge Keys' carefully-thought-through determination and his constructive approach to establishing means for reasonably assuring Obaei's continued appearance rather than flight.[1]

Because this Court's obligation is to exercise its independent judgment on the matter,[2] it is really unnecessary to distinguish Judge Der-Yeghiayan's determination by pointing to

---

[1] Both Judge Der-Yeghiayan's order and the government's 16-plus page response to Obaei's Motion focused on a perceived risk of flight--of nonappearance at trial--not on the other 18 U.S.C. §3142 criterion of reasonably assuring the safety of other persons and the community. In any event, no such other danger reasonably appears to be evidenced by the record.

[2] This Court's discharge of that obligation is not controlled by the Court of Appeals' one-sentence rejection of Obaei's interlocutory appeal of Judge Der-Yeghiayan's ruling, which plainly reflected a determination that it was not an abuse of discretion. This Court's strongly-held view is that the exercise of discretion is better served by the ruling made here.

3

its several shortcomings--Obaei's counsel's August 5, 2005 Motion for Bond Pending Trial accurately portrays them.[3] By contrast, the conditions that had been carefully crafted by Magistrate Judge Keys--including the required posting by non-family third parties of real estate security valued at $1.5 million to provide more than reasonable assurance of Obaei's appearance when required[4]--meet both the letter and the spirit of the release statutes. In that respect this Court cannot share the unsupported inference drawn by Judge Der-Yeghiayan, who it will be remembered did not have the opportunity to evaluate the credibility of the witnesses who appeared during Magistrate Judge Keys' extended hearing:

---

[3] Without seeking to address all of its problematic aspects--for the thoughtful presentation by Obaei's counsel does that admirably--this Court is particularly troubled by Judge Der-Yeghiayan's criticism of naturalized citizen Obaei's purported flouting of his citizenship oath of allegiance by the maintenance of dual nationality, even though our State Department recognizes such dual nationality as legitimate (Obaei's Motion at 10-11 provides chapter and verse in that respect). Indeed, as serious as the charges against Obaei are (something that this Court has taken into account), the fact remains that the large majority of criminal defendants whom we encounter in the federal courts are natural-born citizens (often from United States citizen antecedents going back several generations) who have demonstrated their own "allegiance" to our country by committing comparably serious crimes (see, e.g., such cases as those cited in Obaei's Motion at 5-8 and 9 n.5).

[4] Magistrate Judge Keys' other required conditions of release included continuous electronically monitored home confinement and the surrender of all passports by Obaei and his family (the latter had already taken place).

Even though some of Obaei's friends and family are willing to put forth their properties for Obaei's bond, Obaei's prior disrespect for the law and past actions and criminal activities, indicates that Obaei would not hesitate for one moment to ditch his friends and family.[5]

## Conclusion

This Court rules that codefendant Hosseini is to remain on bond on the conditions that have been in effect without incident for some eight months. It orders the release of codefendant Obaei on the conditions that had been prescribed by Magistrate Judge Keys following his evidentiary hearing. As soon as those conditions are complied with, Obaei is to be brought before this Court so that the appropriate cautionary information and warnings can be given (including the procedure referred to in n.5) and an appropriate release order can be entered.

_____
Milton I. Shadur
Senior United States District Judge

Date: March 10, 2006

---

[5] [Footnote by this Court] This Court's uniform practice whenever security is provided by anyone other than a defendant is to interrogate both the providers and the defendant, to make certain that the former understand and are prepared to undertake the risk of possible loss of their property and to ascertain from the defendant that those providers--family or otherwise--are sufficiently important to him or her so that the defendant will not trigger that loss by fleeing. Magistrate Judge Keys properly addressed that subject by identifying the risk of loss for all concerned (May 5, 2005 Hearing at 113-15). Nonetheless, even though doing so may be "to paint the lily, to gild refined gold" (William Shakespeare, King John act 4, sc. 2), this Court plans to follow its own practice here by reconfirming that cautionary inquiry.

5