IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,       )
                                )
                  Plaintiff,    )
                                )
        v.                      )        No.  05 CR 254
                                )
AMIR HOSSEINI and               )
HOSSEIN OBAEI,                  )
                                )
                  Defendants.   )

MEMORANDUM OPINION AND ORDER

At this Court's request the parties have provided

supplemental authority as to the motion by Amir Hosseini

("Hosseini")[1] to strike the "false lien scheme" charged in the

indictment as assertedly involving mail fraud under 18 U.S.C.

§1341[2] as part of a RICO conspiracy.  Paragraph 10.d through 10.k

of Count One of the indictment, a photocopy of which provisions

is attached to this opinion, set out the language targeted by the

motion.

This dispute does not involve a mere quibble over language.

Any RICO charge depends on the violation of a substantive

criminal statute, in this instance Section 1341.  And the history

---

[1]  Although codefendant Hossein Obaei has neither advanced
the same argument nor filed a motion to join in all Hosseini
motions, this Court's granting or denial of the Hosseini motion
will impact the case against Obaei with equal force, for the
challenged language will be either in or out of the indictment as
a whole.

[2]  All further references to Title 18's provisions will
simply take the form "Section--."

of that statute, both in terms of the relevant caselaw and in the halls of Congress, confirms that a scheme to defraud must involve the deprivation or attempted deprivation of _property_, which Hosseini urges is not involved in the challenged portion of the indictment.

Although this judicial district may not have been the birthplace of the prosecutorial extension of Section 1341 to encompass intangible rights, it was one of the leaders in employing that concept in high profile cases--in part by charging governmental officials with having deprived the public of the right to have governmental activities conducted honestly. That effort came to an abrupt end when the Supreme Court scotched that reading in _McNally v. United States_, 483 U.S. 350 (1987), a case that expressly limited the reach of Section 1341 to schemes to deprive victims of property or money. When Congress then promptly reacted by a legislative overruling of _McNally_, it did so by adding Section 1346:

> For the purposes of this chapter, the term "scheme or artifice to defraud" includes a scheme or artifice to deprive another of the intangible right of honest services.

That serve and volley brought the issue back within the purview of the Supreme Court in _Cleveland v. United States_, 531 U.S. 12 (2000). _Cleveland_, _id_. at 25 (case citations omitted) stated the operative standard for construction of Section 1341:

> Moreover, to the extent that the word "property" is

2

ambiguous as placed in §1341, we have instructed that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." This interpretive guide is especially appropriate in construing §1341 because, as this case demonstrates, mail fraud is a predicate offense under RICO, 18 U.S.C. §1961(1) (1994 ed., Supp. IV), and the money laundering statute, §1956(c)(7)(A). In deciding what is "property" under §1341, we think "it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite."

And the Court went on to hold (id. at 26-27):

We conclude that §1341 requires the object of the fraud to be "property" in the victim's hands....Absent clear statement by Congress, we will not read the mail fraud statute to place under federal superintendence a vast array of conduct traditionally policed by the States.

Thus the parties have locked horns over whether the scheme charged in this case involves deprivation of property rights (covered by Section 1341) or, instead, intangible rights (not so covered). As Hosseini would have it, the assertion of false liens against vehicles that had actually been paid for in full--something that would cause the governmental authority to return lawfully-seized vehicles to the asserted lienholder rather than forfeiting them because of other violations of law--may perhaps trigger other remedies, but not a charge under Section 1341 (and hence under RICO). What the government counters with is the argument, citing 21 U.S.C. §853(c) ("Section 853(c)[3]), that

---

[3] Because of the difference in numbering, no confusion should be created by the use of the "Section" shorthand both for that statute and for Title 18 provisions.

"because the cars were subject to forfeiture at the moment they were sold in a money laundering transaction" (Gov't Supp. Mem. at 1), the requisite property interest existed at that point and therefore brought the matter within Section 1341's ambit.

That argument, however, smacks of artificial levitation. What the government points to on that score is the provision of Section 982(a)(1) that "a person convicted of an offense in violation of section 1956 [the money laundering statute] of this title, shall...forfeit to the United States any property, real or personal, involved in such offense," coupled with this quotation (emphasis added) from Section 853(c):

> all right, title and interest in property...vests in the United States <u>upon commission of the act giving rise to forfeiture under this section</u>.

But the ellipsis in that quotation glosses over the fact that the "property" to which it refers is "property described in subsection (a) of this section." And that subsection, Section 853(a), provides for the forfeiture of that property only by "[a]ny person convicted of a violation of" the drug laws.

Thus both Section 982(a)(1) and Section 853(a) are dependent for forfeiture on a person having been <u>convicted</u> of an offense--money laundering as to the former, a drug offense as to the latter. And the thrust of the relation-back doctrine of Section 853(c) is to change the normal approach to bona fide purchaser status by making the property presumptively forfeitable

unless the claimant "at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture...."

Although it is true that once a conviction takes place it relates back to the time of commission of the unlawful act, it cannot be gainsaid that before such a conviction the right is really inchoate. To restate the matter in terms of McNally and Carpenter and their definitive reading of Section 1341 (except for the limited overriding of McNally when the right to honest services is involved--not an issue here), it places an undue strain on the notion of "property" in terms of the dichotomy between tangible and intangible rights to uphold the government's position.

To identify the flaw in the government's current scenario a bit differently, here is how Count One ¶10.d describes what is labeled there as "Mail Fraud: False Lien Scheme":

> d. It was further part of the conspiracy that defendant HOSSEINI and OBAEI devised, intended to devise, and participated in a scheme to defraud the United States and the City of Chicago, and to obtain money and property from the United States and the City of Chicago, namely automobiles lawfully seized by the United States and the City of Chicago, by means of false and fraudulent pretenses and representations.

That clearly speaks of automobiles already seized, an event that can have taken place only after those automobiles have been involved in criminal activity. And that reading is buttressed by Count One ¶10.f, which clearly speaks of the post-lien-placement

5

possibility as being the contingent event that could potentially

subject those automobiles to forfeiture (emphasis added):

> It was further part of the scheme that, <u>if one of the
> automobiles sold by the STANDARD AUTO ENTERPRISE</u> [the
> asserted RICO "enterprise"], upon which a fraudulent
> lien was placed, <u>was seized</u> by the Chicago Police
> Department or a federal law enforcement agency
> <u>following narcotics transactions or other criminal
> activity subjecting the automobile to forfeiture</u>,
> defendants HOSSEINI and OBAEI, and their Co-
> conspirators, would then falsely claim a security or
> ownership interest in the seized automobile to prevent
> forfeiture of the motor vehicle.

Hence the terms of the indictment, as presented by the

government prosecutors and returned by the grand jury, did not

treat the vehicles' sales themselves as the triggering event for

the government's claimed forfeiture interest.  As Hosseini's

Supp. Mem. 3 puts the matter succinctly:

> An intangible right to a possible future forfeiture is
> what the indictment alleges, not a newly-minted theory
> of property rights accruing at the time of sale.

Hence what the government has now come up with in response to

Hosseini's challenge, asserting instead a claimed property right

that accrues at the time a vehicle is sold and the false lien is

placed against it, is a scenario that impermissibly creates a

substantive variance from the indictment.

Although it may be said that the issue is not entirely free

from doubt, Hosseini has the better of it in analytical terms.

And the unanimous opinion in <u>Cleveland</u>, 531 U.S. at 25 has

reconfirmed in the express context of Section 1341, especially

when coupled with RICO and the money laundering statute, that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity."  That calls for the granting of Hosseini's motion, and this Court so orders.[4]

_____
Milton I. Shadur
Senior United States District Judge

Date:  June 23, 2006

_____

[4]  This ruling moots Hosseini's alternative motion for the production and inspection of grand jury minutes.

or business in violation of 26 U.S.C. §§ 6050I and 7203, and in so doing made and subscribed to the IRS statements containing written declarations that they did not believe to be true and correct as to every material matter, and aided, assisted, procured, and counseled such fraudulent and false declarations.

### Structuring Financial Transactions

c.    It was further part of the conspiracy that defendants HOSSEINI and OBAEI, willfully and for the purpose of evading the reporting requirements of Title 31, United States Code, Sections 5313(a) and 5324, and the regulations prescribed thereunder, did structure transactions involving more than $10,000,000, and assist in structuring transactions and attempted to structure at domestic financial institutions by depositing and causing the deposit of United States currency in amounts under $10,000, in separate transactions at banks as set forth below, and doing so as part of a pattern of illegal activity involving a total of more $100,000 per year during the course of the charged conspiracy.

### Mail Fraud: False Lien Scheme

d.    It was further part of the conspiracy that defendants HOSSEINI and OBAEI devised, intended to devise, and participated in a scheme to defraud the United States and the City of Chicago, and to obtain money and property from the United States and the City of Chicago, namely automobiles lawfully

7

seized by the United States and the City of Chicago, by means of false and fraudulent pretenses and representations.

e. It was part of the scheme that defendants HOSSEINI and OBAEI fraudulently placed liens on automobiles sold to narcotics traffickers and gang members involved in drug trafficking by the three dealerships that comprise the STANDARD AUTO ENTERPRISE, and paid for in full at the time of purchase, which liens falsely indicated that the affiliated entities held security interests in or innocent ownership claim to) automobiles sold by the STANDARD AUTO ENTERPRISE to these drug dealers and/or gang members.

f. It was further part of the scheme that, if one of the automobiles sold by the STANDARD AUTO ENTERPRISE, upon which a fraudulent lien was placed, was seized by the Chicago Police Department or a federal law enforcement agency following narcotics transactions or other criminal activity subjecting the automobile to forfeiture, defendants HOSSEINI and OBAEI, and their Co-conspirators, would then falsely claim a security or ownership interest in the seized automobile to prevent forfeiture of the motor vehicle.

g. It was further part of the scheme that defendants HOSSEINI and OBAEI, as a service to these narcotics traffickers and gang members involved in drug trafficking, would: (1) return the seized vehicles to those clients in exchange for additional

cash payments; or (2) allow those clients to exchange the seized vehicle for another car. Other times, HOSSEINI and OBAEI would simply resell the vehicle at issue and keep the proceeds from the subsequent sale of the car.

h.   It was further part of the scheme that defendants HOSSEINI and OBAEI and their Co-conspirators would present fraudulent and fictitious documents to the Chicago Police Department and federal law enforcement agencies falsely representing that Standard, SHO, and American held security interests in (or innocent ownership claim to) vehicles seized following criminal activity.

i.   It was further part of the scheme that as a result of the material misrepresentations and omissions made by defendants HOSSEINI and OBAEI, and others acting on behalf of the STANDARD AUTO ENTERPRISE, vehicles were returned by the Chicago Police Department and various federal law enforcement agencies, because these local and federal agencies were deceived into believing that the defendants HOSSEINI and OBAEI and the STANDARD AUTO ENTERPRISE held a legitimate security interest in (or innocent ownership claim to) vehicles seized following criminal activity.

j.   It was further part of the scheme that defendants HOSSEINI and OBAEI and their Co-conspirators kept secret from local and federal government agencies and the general public

9

material facts about HOSSEINI and OBAEI's arrangements with various drug dealers and gang members in the Chicago area and the use of fraudulent liens on vehicles purchased by these drug dealers and gang members.

k.    It was further part of the scheme that defendants HOSSEINI and OBAEI and their Co-conspirators caused the Illinois Secretary of State's Office to mail to all three dealerships comprising the STANDARD AUTO ENTERPRISE, Illinois Vehicle Titles reflecting that dealerships comprising the STANDARD AUTO ENTERPRISE held liens on particular vehicles sold, when, in truth and fact, no such liens existed, all in violation of Title 18, United States Code, Section 1341.

**Mail Fraud: Scheme to Avoid Paying Illinois State Vehicle Transfer Taxes on Vehicles sold by the Enterprise**

l.    It was further part of the racketeering conspiracy that defendants HOSSEINI and OBAEI devised, intended to devise, and participated in a scheme to defraud the State of Illinois of money and property, by fraudulently avoiding the payment of sales tax revenue for vehicles sold at all three dealerships comprising the STANDARD AUTO ENTERPRISE as required by 35 ILCS §§ 120/3 and 120/13, and through the use of the United States mails in violation of 18 U.S.C. § 1341.

m.    It was part of the scheme that defendant OBAEI paid money to Brenda Strong, to which she was not entitled, who

10