IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,      )
                               )
                Plaintiff,     )
                               )
      v.                       )      No.  05 CR 254
                               )
AMIR HOSSEINI and              )
HOSSEIN OBAEI,                 )
                               )
                Defendants.    )

<u>MEMORANDUM OPINION AND ORDER</u>

On February 26, 2007 a jury found defendants Amir Hosseini
("Hosseini") and Hossein Obaei ("Obaei") guilty on all counts in
the multicount superseding indictment.  They were jointly
convicted of a racketeering conspiracy in violation of the
Racketeering, Influenced and Corrupt Organizations Act ("RICO,"
18 U.S.C. §1962[1])(Count 1[2]) and of Section 1956(a)(1)(B)(i) money
laundering and a money laundering conspiracy (Counts 3, 10 and
11).  In addition, Hosseini was found individually guilty of
money laundering (Count 4), two counts of mail fraud under
Sections 1341 and 1342 (Counts 97-98) and dozens of counts of
structuring transactions to avoid reporting requirements in
contravention of 31 U.S.C. §5324(a)(3) and (d)(2) (Counts 13-63).

---

[1]  Further citations to Title 18 will simply take the form
"Section --" omitting the prefatory reference to the title
number.

[2]  This and all other references to counts in the
superseding indictment will use Arabic numerals rather than the
actual word usage ("Count One," for example).

For his part, Obaei was also found guilty of aiding and abetting a narcotics trafficking conspiracy under Section 2 and 21 U.S.C. §846 (Count 2), four more counts of money laundering (Counts 6-9), three counts of Section 1344(2) bank fraud (Counts 94-96), two counts of mail fraud (Counts 99-100) and numerous structuring counts (Counts 64-71, 73-93).

Based on the RICO, money laundering and structuring convictions, the government now pursues the forfeiture aspects of the superseding indictment, seeking forfeiture of significant assets pursuant to Section 1963 (RICO), Section 982(a) (money laundering) and 31 U.S.C. §5317(c)(1) ("Section 5317(c)(1)"[3]) (structuring). Both defendants and the government had agreed before trial that this Court rather than the jury should decide the extent of forfeiture and that it may for that purpose make all necessary findings of fact based on the jury verdict, the trial evidence and the parties' submissions.

In sum, this opinion holds that each defendant's entire stock and any other ownership interest in Amer Leasing Sales, American Car Exchange and SHO Auto Credit (collectively "Dealerships"[4]) are forfeitable, as are also the real estate

---

[3] Because that Title 31 section number is markedly different from any of the Title 18 section numbers cited here, this opinion's use of the shorthand "Section --" for each should not cause any confusion.

[4] Hosseini, Obaei and the Dealerships were defined in Count 1 ¶7 of the superseding indictment as the "Standard Auto

properties specified in the superseding indictment.  But this opinion further holds that the government has failed to prove entitlement to the additional money forfeiture that it has sought.

Background

In brief summary, over a period of many years Hosseini and Obaei conducted a racketeering conspiracy through their ownership of the three used car Dealerships.  Hosseini owned Amer Leasing Sales, Obaei owned American Car Exchange, and SHO Auto Credit was owned by Obaei and Hosseini together.  They used the Dealerships in large part to sell cars to drug dealers who would pay for the vehicles with large cash payments (thousands of dollars in small denominations) that the jury necessarily found were proceeds of illegal drug sales.  Hosseini and Obaei would then attempt to conceal--to launder--those illegal proceeds by means of creative paper work documenting the sales.

In a further effort to hide their large illicit cash business, Hosseini and Obaei took great care not to deposit $10,000 or more in cash into their business bank accounts at any one time (to avoid triggering the banks' mandatory IRS reporting requirements).  Indeed, the trial evidence demonstrated that among the three Dealerships over a multiyear span, millions of

_____

Enterprise," the association-in-fact enterprise for RICO purposes.

dollars of cash deposits into the business bank accounts were divided up into thousands of deposits, only five of which equaled $10,000 or more (Government Exhibit ["G. Ex."] Schindler 4, 7, 11).  On some days four, five or even seven deposits of less than $10,000 each were made into the same account (G. Ex. Schindler 12).

Burden of Proof

As stated earlier, Congress has provided for criminal forfeiture based on Hosseini's and Obaei's RICO, money laundering and structuring convictions, and the parties have agreed that this Court should make any necessary factual findings for that purpose.  At the outset that calls for a decision as to the government's burden of proof on that issue.

In the context of 21 U.S.C. §853(a) criminal forfeiture in drug cases, United States v. Patel, 131 F.3d 1195, 1200 (7th Cir. 1997)(citations omitted) has taught:

> It is by now well settled that criminal forfeiture
> under section 853(a) is considered an element of the
> defendant's sentence, rather than an element of the
> underlying crime.  As such, the government need only
> establish its right to forfeiture by a preponderance of
> the evidence, the standard applicable at sentencing,
> rather than by proof beyond a reasonable doubt.

And United States v. Vera, 278 F.3d 672, 673 (7th Cir. 2002) has held that because with Section 853(c) forfeiture "there is no 'prescribed statutory maximum' and no risk that the defendant has been convicted de facto of a more serious offense," Apprendi v.

_New Jersey_, 530 U.S. 466 (2000) did not change the rule that forfeiture may be decided "on a preponderance standard." Although _United States v. Swanson_, 394 F.3d 520, 526 n.2 (7th Cir. 2005) noted that the then-anticipated decision in _United States v. Booker_, 543 U.S. 220 (2005) might affect that rule, the post-_Booker_ decision in _United States v. Melendez_, 401 F.3d 851, 856 (7th Cir. 2005) has reiterated that criminal forfeiture may be decided by a preponderance and not a beyond-a-reasonable-doubt standard.

In addition to those broad statements that are not tied to any specific statutory language of Section 853(a), both money laundering forfeiture (in Section 982(b)(1)) and structuring forfeiture (in Section 5317(c)(1)(B)) explicitly incorporate the procedures used in Section 853(a) forfeiture, certainly suggesting that a preponderance standard should also apply under those statutes (cf. _Swanson_, 394 F.3d at 526, applying _Vera_ to Section 982(a)). With no statutory language pointing to a different result, this opinion will therefore apply a preponderance standard under Sections 982(a) and 5317(c)(1).

One court has found that a close reading of the statutory language of RICO Section 1963 presents a different situation altogether, requiring the use of a beyond-a-reasonable-doubt standard in forfeiture proceedings under that section (_United States v. Pelullo_, 14 F.3d 881, 901-06 (3d Cir. 1994)). But

other courts--finding guidance in <u>Libretti v. United States</u>, 516
U.S. 29, 38-39 (1995)--have come to the opposite conclusion that
Section 1963 also requires only proof by a preponderance of the
evidence (<u>United States v. Corrado</u>, 227 F.3d 543, 550-51 (6th
Cir. 2000); <u>United States v. DeFries</u>, 129 F.3d 1293, 1312 (D.C.
Cir. 1997)(per curiam)).  And other courts have also suggested,
though without deciding, that a preponderance standard should
apply (see, e.g., <u>United States v. Houlihan</u>, 92 F.3d 1271, 1299
n.33 (1st Cir. 1996)).

No case from our own Court of Appeals appears to have
addressed the issue squarely.  For example, <u>United States v.
Horak</u>, 833 F.2d 1235, 1243-44 (7th Cir. 1987), while accepting
that the government had agreed there to a beyond-a-reasonable-
doubt standard,[5] still took the trouble of citing a string of
cases that showed the question was still open in this circuit at
that time.  On balance, <u>Pelullo</u> is clearly the minority view (see
Stefan D. Cassella, <u>Does</u> <u>*Apprendi v. New Jersey*</u> <u>Change the
Standard of Proof in Criminal Forfeiture Cases?</u>, 89 Ky. L.J. 631,
632 & 632 n.3 (2001)), so that this opinion could well apply the
lesser requirement of proof by a preponderance of the evidence.

But with all of that said, this Court is left with the same

---

[5]  It seems not uncommon for the government to concede that
more demanding standard for Section 1963 forfeiture even though
it might not be required by law (see e.g., <u>DeFries</u>, 129 F.3d at
1312 n.14; <u>Houlihan</u>, 92 F.3d at 1299 n.33).  Here the government
has certainly not made its position clear in its submissions.

guilt feelings that should be harbored by a court that has, for example, painstakingly analyzed a choice of law issue on any subject (such as the standard of proof) that poses no more than a "false conflict" (see, e.g., <u>Micro Data Sys., Inc. v. Dharma Sys., Inc.</u>, 148 F.3d 649, 653-54 (7th Cir. 1998)). On the evidence in the record, this Court would reach the same findings of fact under either a preponderance or a beyond-a-reasonable-doubt standard. That is, wherever the government has made its proof it has done so beyond a reasonable doubt, and wherever the government has failed in its showing it has done so whether viewed under a reasonable doubt framework or through a preponderance lens.

<u>Stock and Ownership Interest in the Three Dealerships</u>

As to the first category of property sought by the government, there is no doubt that the entirety of each defendant's stock and any other ownership interest in Amer Leasing Sales, American Car Exchange and SHO Auto Credit is forfeitable. While the government seeks forfeiture of those interests via several theories (under RICO and Sections 982(a) and 5317(c)(1)(A)), that result is so clearly called for under RICO Section 1963(a)(2) that this opinion needs to address only that theory.

Once the jury convicted Obaei and Hosseini of engaging in the racketeering conspiracy in violation of Section 1962 as

charged in Count 1, a forfeiture order pursuant to Section
1963(a) became mandatory. Section 1963(a) demands that any
defendant found guilty of violating Section 1962:

> shall forfeit to the United States, irrespective of any
> provision of State law --
>
>> (1) any interest the person has acquired or maintained
>> in violation of section 1962;
>>
>> (2) any --
>>
>>> (A) interest in;
>>> (B) security of;
>>> (C) claim against; or
>>> (D) property or contractual right of any kind
>>> affording a source of influence over;
>>
>> any enterprise which the person has established,
>> operated, controlled, conducted, or participated in the
>> conduct of, in violation of section 1962; and
>>
>> (3) any property constituting, or derived from, any
>> proceeds which the person obtained, directly or
>> indirectly, from racketeering activity or unlawful debt
>> collection in violation of section 1962.

United States v. Segal, Nos. 05-4601 and 05-4756, 2007 WL
2200507, at *9 (7th Cir. Aug. 2) has recently reiterated the
principle that under Section 1963(a)(2) a defendant's entire
interest in the RICO enterprise that served as the basis for his
or her Section 1962 conviction is forfeitable, regardless of the
extent to which any part of that enterprise was engaged in
legitimate activity (see also United States v. Sarbello, 985 F.2d
716, 722 (3d Cir. 1993)).[6]  In convicting Hosseini and Obaei of

_____

    [6]  Segal also makes clear (without explicitly making the
point) that a United States v. Genova, 333 F.3d 750, 761 (7th

8

the racketeering conspiracy described in Count 1, the jury necessarily found that Amer Leasing Sales, American Car Exchange and SHO Auto Credit were part of an association-in-fact ongoing RICO enterprise as described in Section 1962. It is also unquestionable that both Hosseini and Obaei held ownership interests in those businesses that allowed them to operate the Dealerships in violation of Section 1962. Nothing more is needed to find that all of Hosseini's and all of Obaei's stock and other ownership interests in each of the three Dealerships must be forfeited under Section 1963(a)(2).[7]

One issue must give a moment's pause--but not much more than that. Each Dealership apparently engaged in a significant amount of legitimate business in the form of lawful car sales. Even though that fact does not prevent forfeiture of those Dealerships under the literal language of Section 1963(a)(2), it does raise the possibility that the forfeiture would have to be limited by the Excessive Fines Clause of the Eighth Amendment (<u>United States v. Porcelli</u>, 865 F.2d 1352, 1364-65 (2nd Cir. 1989)). On that score <u>United States v. Bajakajian</u>, 524 U.S. 321, 337 (1998)

---

Cir. 2003) net-proceeds vs. gross-proceeds inquiry is inapplicable to a Section 1963(a)(2) forfeiture of a defendant's interest in the actual RICO enterprise. That is the natural thrust of the statutory language requiring forfeiture of "any...interest in...any enterprise...."

[7]     Indeed, Obaei has conceded that his ownership interest in the Dealerships is entirely forfeitable (Obaei Response 6).

teaches that "[i]f the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional." Bajakajian, id. at 337-40 then provided examples of factors to consider in making that comparison, including the proportion of the forfeiture involving legal funds, the extent to which the forfeited property was to be used for legal purposes, the other statutory punishments and the harm caused by the offense.

In light of the harm caused by the defendants' multiyear, multimillion dollar racketeering conspiracy involving the laundering of drug money from various notorious gang members in the City of Chicago, the significant gravity of the offense is self-evident. Nothing in the evidence portrays Hosseini's and Obaei's motives as anything other than the wish to make a larger and faster profit than they could have made by above-the-board car sales alone, without regard to the risks caused to their community, their employees and their families (see United States v. Van Brocklin, 115 F.3d 587, 601-02 (8th Cir. 1997)). Finally, the government has made a strong showing that despite regular legitimate car sales, the Dealerships were thoroughly "tainted by criminal conduct" (id. at 602). That proof included (1) testimony from employee-witnesses that the cash business at the Dealerships was largely from the illicit money-laundering transactions and (2) documentation that for multiyear periods

large percentages of the deposits into Dealership bank accounts were cash deposits under $10,000, amounting to millions of dollars in the aggregate (G. Ex. Schindler 4, 7, 11). Forfeiture of each defendant's entire interest in the three Dealerships is clearly appropriate and constitutional, given the gravity of their crime.

Amer Leasing Sales Real Estate

In addition to the stock and ownership interests in the three Dealerships, the government also seeks forfeiture of the two parcels of real estate--3350-56 and 3434 West North Avenue in Chicago--that were the physical locations of Amer Leasing Sales. Again those properties are clearly forfeitable under Section 1963(a)(2), making it unnecessary to address the government's other forfeiture theories.

As noted, Amer Leasing Sales was found by the jury to be part of the Count 1 RICO enterprise. And there is no question that the enterprise used its real properties, which were the physical situs for money-laundering car sales, to further the racketeering conspiracy. In affirming a RICO forfeiture of a condominium used as a mail dropoff and phone center for a prostitution ring, United States v. Stern, 858 F.2d 1241, 1250 (7th Cir. 1988)(internal quotation marks omitted) instructed that under Section 1963(a)(2):

> [W]here a RICO participant's property is used by him to
> further the affairs of a RICO enterprise or where that

> property affords the person a source of influence over
> the enterprise, that property is subject to forfeiture.

Because those real properties were used to operate and participate in the RICO enterprise for which defendants were convicted, both defendants must also forfeit any interests in those properties. And for the already-stated reasons regarding the ownership of the Dealerships themselves, the forfeiture of the real estate is not constitutionally disproportionate to the gravity of defendants' crimes.

<u>3803 West North Avenue, Chicago</u>

One other parcel of real estate is the subject of a forfeiture claim: the property at 3803 West North Avenue, Chicago, assertedly traceable to Hosseini's structuring offenses under Section 5317(c)(1)(A). In that regard the government has satisfactorily proved the real estate was in fact purchased with funds structured into Amer Leasing Sales' bank accounts and is therefore forfeitable.

As the next section of this opinion reflects, the jury found Hosseini guilty of structuring some $1,278,088 into Amer Leasing Sales bank accounts (Counts 13-63), and the government has presented persuasive evidence that the structured transactions over the years of the RICO conspiracy actually amounted to millions more. Under Section 5317(c)(1)(A) Hosseini must be ordered "to forfeit all property, real or personal, involved in the offense and any property traceable thereto" (see, e.g., cases

collected in Stefan D. Cassella, <u>The Forfeiture of Property</u>
<u>Involved in Money Laundering Offenses</u>, 7 Buff. Crim. L. Rev. 583,
591 n.17 (2004) (hereafter cited simply "Cassella")).

In addition to the government's having shown Hosseini's
ownership interest in the property at issue, codefendant Roy
Bambouyani ("Bambouyani")--one of Hosseini's employees and also
the owner of a part interest in the property--entered a guilty
plea in this case that in part stipulated that the parcel was
purchased with structured funds and was therefore forfeitable
under Section 5317(c)(1)(A). It is of course true that Hosseini
is not bound by Bambouyani's stipulation as such, but he has not
raised that issue at all, objecting instead on the sole basis
that 3803 West North Avenue was assertedly not "property
involved" in the structuring offenses. That argument lacks any
force, for it ignores the fact that Section 5317(c)(1)(A) also
requires the forfeiture of property "traceable to" "property
involved" in the offense. To make a bad pun, Hosseini has
forfeited any potential argument that the property was not
purchased with structured funds.

This Court therefore orders that Hosseini forfeit any
interest he has in the 3803 West North Avenue property. And for
essentially the identical reasons that the forfeiture of
Hosseini's interest in the Dealerships is not constitutionally
excessive, this Court also holds that the forfeiture of that real

13

estate is proportional to the gravity of his offenses.

Money Forfeiture

What is far more problematic than the issues already addressed is the government's attempt to obtain forfeiture (1) of $10 million from Hosseini and Obaei jointly and severally, under RICO Section 1963 and money laundering Section 982(a) theories, and (2) $9 million from Hosseini and $1 million from Obaei as structured funds under Section 5317(c)(1)(A). And as the ensuing analysis reflects, the government comes up short in that effort.

In that respect both the government and defendants spill a great deal of ink arguing as to the extent to which such Seventh Circuit cases as United States v. Masters, 924 F.2d 1362, 1369-70 (7th Cir. 1991), United States v. Scialabba, 282 F.3d 475, 475 (7th Cir. 2002) and Genova, 333 F.3d at 761 require the government to prove that the $10 million requested represents net income (that is, illegitimate income after the costs of conducting the illegal business have been deducted) rather than gross income from the defendant's various illegal activities. But it is unnecessary to enter that thicket[8] because the government's effort here fails for an entirely separate reason. Ultimately the government has failed to proffer the requisite

---

[8] It appears that our Court of Appeals stands alone in espousing a net income approach, and the Supreme Court has granted certiorari on that subject in United States v. Santos, 127 S.Ct. 2098 (2007)--the Seventh Circuit's opinion in that case is reported at 461 F.3d 886 (7th Cir. 2006).

14

evidence to show that whatever money forfeiture might otherwise
be appropriate under Section 1963, Section 982(a) or Section
5317(c)(1) is not subsumed in the forfeiture of each defendant's
entire interest in the three Dealerships.

Even a brief review of the government's evidence as to what
makes up its boxcar $10 million claim reveals that there is
insufficient proof under any of its forfeiture theories to
separate those monies from the Dealerships themselves. At root
the money claimed is potentially forfeitable because much (if not
all) of those funds were the proceeds from the sale of cars to
drug dealers for drug money in cash transactions designed to
launder the dirty cash. That alone could make the $10 million
(assuming arguendo the provability of that number, something that
has not been shown) forfeitable as property "involved" in the
Section 1956 offenses found by the jury (see, e.g., <u>United States
v. Baker</u>, 227 F.3d 955, 968-69 (7th Cir. 2000); Cassella at 614-
20). And as money earned by the RICO enterprise through illegal
activity, it could also be held forfeitable under Section
1963(a)(3) as "proceeds" of racketeering activity (<u>Genova</u>, 333
F.3d at 760-61).[9]

Moreover, the jury did find (1) that Hosseini structured
dozens of cash deposits, each less than $10,000 (without doubt

---

[9] On that point, however, the government has failed to
demonstrate that the funds are net income and not gross revenue
as required by <u>Genova</u>, 333 F.3d at 761.

largely, if not entirely, consisting of the cash drug money from those illicit money laundering car sales) and totaling $1,278,088, into the Dealerships' business bank accounts (Counts 13-63) and (2) that Obaei did the same into his business accounts to the aggregate tune of $403,478 (Counts 64-93). Those amounts would thus be potentially forfeitable as property "involved" in those structuring offenses found by the jury (Section 5317(c)(1); see, e.g., Cassella at 587-92).

Also increasing the potential for forfeiture under Section 5317(c)(1), the government has further shown that from 2001 to 2004 there were 2228 cash deposits into Amer Leasing Sales' bank accounts--only one of which was for $10,000 or more--totaling $15,286,732 (G. Ex. Schindler 11). Similarly, American Car Exchange's bank accounts in 2003 and 2004 had 409 cash deposits--only two of which were equal to or greater than $10,000--totaling $2,412,549 (G. Ex. Schindler 7). And SHO's bank accounts from 2002 to 2004 reflected 229 cash deposits--only two equal to or greater than $10,000--totaling $1,101,239.

But all of those factors speak to the potentiality, not the actuality, of forfeiture. And in terms of actuality, the government's attempt to mulct defendants of any such sums (or indeed of any sums) over and above their already forfeited interests in the Dealerships has glossed over (or, more accurately, has ignored entirely) the fact that every one of the

16

structured deposits and every bit of laundered money went directly _into the Dealerships_.  Indeed, the whole point of the money laundering scheme was to make the car sales appear to be legitimate business as usual.  And all of the structured funds were likewise deposited into one or another of the Dealerships' business accounts.

Not a scintilla of proof has been proffered to show the extent to which any of the money involved then flowed out of the Dealerships into Hosseini's or Obaei's hands (or into anyone else's hands for the benefit of Hosseini or Obaei).  Though common sense might well anticipate a probable affirmative answer to that general question, what is after all required is proof and not just speculation.  Nothing in the trial record enables this Court to make a finding of fact in that respect, and the government has devoted the bulk of its post-trial briefing on forfeiture to an effort to show why the Supreme Court should reverse the Seventh Circuit in _Santos_ (see n.8) and not to any necessary quantification of money forfeiture beyond the Dealerships as such.[10]

---

[10]  _Baker_, 227 F.3d at 970, on which the government seeks to place heavy reliance, made clear that what was forfeitable there was "income Baker generated over the years, not what he now has." In other words, the government need not show that a defendant continues to possess the forfeitable assets or amounts at the time of conviction, but it must still prove what "income" the defendant himself derived from the criminal enterprise at some point in time.

Hosseini and Obaei will of course forfeit any interest in whatever funds are still in the Dealership bank accounts via the forfeiture of all of their ownership interests in those businesses. But for aught the government has shown, that is where all the forfeitable ill-gotten money remains. It has not demonstrated--by any acceptable standard of proof--the extent of any salaries, bonuses, profits or dividends derived by Obaei or Hosseini from their businesses, to say nothing of any money they might otherwise have procured from the Dealerships (contrast Segal, 2007 WL 2200507, at *10).

To be sure, the government has correctly pointed out that any tracing of forfeitable dollar bills is unnecessary--there is no need to follow serial numbers. For example, if the government had shown that Hosseini had deposited $1000 of the proceeds from one of the illicit car sales into an account, commingling it with $1000 from a legitimate car sale, and that he then withdrew $1000 from that account for his personal benefit, the government would not need to show whether the $1000 was from the clean or dirty money for it to be forfeitable from Hosseini (see, e.g., United States v. Braxtonbrown-Smith, 278 F.3d 1348, 1352-55 (D.C. Cir. 2002)). But what the government must show (and has utterly failed to show here) is that Hosseini or Obaei obtained some identifiable amount of money from those business accounts flush with illegal proceeds. As United States v. Ginsburg, 773 F.2d

18

798, 801 (7th Cir. 1985)(en banc)(emphasis added) has explained:

> It therefore does not matter whether the government
> recovers the identical dollars that the defendant
> received in violation of section 1962, as long as the
> amount that the <u>defendant acquired</u> in violation of the
> statute is known.

Put another way, the problem presented is one of double-counting. Just this month <u>Segal</u> found an analogous problem. There the district court had ordered defendant Segal to forfeit his ownership interest in a corporation that was tainted by racketeering activity and further ordered Segal to forfeit $30 million that he obtained as proceeds from the illegal enterprise. <u>Segal</u> found a double-counting error because some of that $30 million was actually plowed back into the corporation and was thus already being forfeited via Segal's loss of his ownership interest in that corporation. <u>Segal</u>, 2007 WL 2200507, at *11 (emphasis added) thus remanded the case:

> for a determination of what portion of the $30 million
> was not reinvested in the enterprise, but rather <u>went</u>
> <u>to benefit Segal personally</u> and is subject to
> forfeiture as proceeds of the illegal enterprise.

Both Hosseini and Obaei argue that the government has similarly failed to show how much of the potentially forfeitable money was reinvested in the Dealerships, thus raising the specter of some double recovery by the government. But the failure of proof is even more fundamental than that: Here the government has not offered proof that the forfeitable property ever left the Dealerships in the first place so as "to benefit [Hosseini or

Obaei] personally" (id.).  Hence this Court is constrained to hold that for aught that appears, whatever might otherwise be independently forfeitable as illegal proceeds from racketeering activity or as money involved in the money laundering and structuring transactions is subsumed in the already adjudicated forfeiture of Hosseini's and Obaei's ownership interests in the Dealerships.

Nor should the government be permitted, at this stage, to say "Oops!" and try to cure its failure of proof.  It could not have done that if the forfeiture issue had been presented to the jury along with the substantive charges after the proofs at trial had closed and any hearing under Fed. R. Crim P. ("Rule") 32(2) had then taken place, and if the jury had perforce arrived at the same result that has been reached here.  And Hosseini and Obaei should not be penalized for having agreed to the forfeiture issue being resolved instead by this Court, with the parties then having opted for any further submissions via briefs, and with no further evidentiary hearing having been called for (see Rule 32.2(b)(1)).

## Conclusion

In sum, this Court finds that the government has sufficiently met its burden of proof for the forfeiture of (1) all of Hosseini's and Obaei's stock and other ownership interests in the three Dealerships, (2) Hosseini's and Obaei's

interests in the real estate associated with Amer Leasing Sales

(3350-56 and 3434 West North Avenue in Chicago) and

(3) Hosseini's interest in 3803 West North Avenue, Chicago. But

this Court finds that the government has wholly failed to present

the evidence required to justify an additional money forfeiture

from either defendant as sought in the superseding indictment.

Unless the issuance of this opinion somewhat earlier than

anticipated, coupled with the possible availability of counsel

for the defendants and the government, may permit an earlier

sentencing, the sentencing of Hosseini and Obaei now scheduled

for September 14, 2007, will proceed at that time and will

include the forfeitures adjudicated here.[11]

_____

Milton I. Shadur

Date:  August 16, 2007    Senior United States District Judge

---

[11]  Even though this Court's excellent law clerk George
Luscombe III may have one or two brief tag-end assignments to
handle before his term ends just before Labor Day, his draft of
this opinion has marked his swan song in terms of major projects.
That being so, it is more than appropriate to give proper
recognition here to the truly outstanding work--both in analysis
and in presentation--that has consistently marked George's
clerkship tenure.  In this instance, as in others, he has gone
well beyond the boundaries marked out by the submissions tendered
by able counsel for the parties to provide some special insights
into the intricate legal issues involved. But this tribute should
not be misunderstood as laying any flaws that might be found in
this opinion at George's doorstep rather than this Court's--as
this Court always stresses when paying tribute to the work of a
particularly fine clerk, the ultimate work products are always
the product of this Court's judgment, including its word-by-word
and sentence-by-sentence reworking of a clerk's original draft.