```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
                        EASTERN DIVISION

UNITED STATES OF AMERICA,         )
                                  )
               Plaintiff,         )
                                  )
     v.                           )    No. 05 CR 254
                                  )
AMIR HOSSEINI and                 )
HOSSEIN OBAEI,                    )
                                  )
               Defendants.        )
```

## MEMORANDUM OPINION

This Court has just received, from counsel for the two defendants in this action, (1) the reply memorandum in support of the earlier sentencing memorandum filed on behalf of Amir Hosseini ("Hosseini") and (2) a sentencing memorandum and supplemental memorandum filed on behalf of Hossein Obaei ("Obaei"), the latter of which have understandably not produced a government response because of the lateness of their arrival. This memorandum opinion is intended to provide to all parties a statement of this Court's present views of the issues posed by the parties regarding the sentencing guidelines,[1] as gleaned from their respective submissions and from this Court's independent analysis, with a view to facilitating discussion of the issues at the time of the scheduled October 4 sentencing. It does not speak to guideline factors as to which the parties have not

---

[1] All guidelines references will be to the November 1, 2006 Guidelines Manual, with the citations to that Manual simply consisting of "§" followed by the section number involved.

crossed swords, and it does not address at all the ultimate 18 U.S.C. §3553(a)[2] analysis that this Court will make at the time of sentencing (for which purpose the guideline calculation will of course be a necessary first step en route to treating the guidelines formulation as advisory rather than controlling).

First, as to the guideline calculation based on money laundering, both defense counsel have missed the boat entirely: Each of them characterizes "the underlying offense from which the laundered funds were derived" (the language of §2S1.1(a)(1)) as denoting defendants' _structuring_ activity. But even a brief look at the money laundering statute (Section 1956) reveals that the money at issue is required to represent the _proceeds_ of some form of unlawful activity, and the jury instructions on the Count Three money laundering conspiracy charge and all of the individual substantive money laundering counts are based on the laundering having involved the proceeds of _drug trafficking_.

To be sure, the money laundering was implemented through a massive program of structuring, but the structured funds were of course not the "proceeds" of the structuring itself. And also to be sure, the government's response (its Mem. 3-4) doesn't speak to that subject at all--it simply says that the money laundering guideline applies, without having discussed the problem just

---

[2] All further references to Title 18's provisions will simply take the form "Section--."

addressed here.

But the short answer is that in terms of the applicability of §2S1.1(a), the "underlying offense from which the laundered funds were derived" was drug trafficking and <u>not</u> structuring. In those terms §2S1.1(a)(1) simply does not apply because neither defendant fits the requirement of having "committed the underlying offense,"[3] nor would defendants "be accountable for the underlying offense under §1B1.2(a)(1)(A)" as called for under §2S1.1(a)(1)(A).

In sum, each defendant's PSI is correct in looking to §2S1.1(a)(2) for the guideline calculation, which is specified as offense level 8 plus the number of levels "corresponding to the value of the laundered funds." In terms of the amounts to be plugged in under that formulation, all sides' presentations leave something to be desired. Both defendants try to argue that this Court's rejection of a money forfeiture for the reasons stated in its August 16, 2007 memorandum opinion and order means that no

---

[3] Although Obaei (and not Hosseini) was found guilty of the Count Two charge of conspiracy to possess with intent to distribute a controlled substance, his role in that regard was that of a minor participant (the sale of vehicles to individuals knowing that the vehicles would be used to smuggle narcotics from Mexico into the United States, with Obaei playing no role in the actual distribution of controlled substances). It would distort the guideline calculation if that small tail were permitted to wag the much larger dog of money laundering. In addition, it cannot be determined from the record what portion of the laundered funds were derived from that activity in any event, so that the added criterion of determinability of the offense level (§2S1.1(a)(1)(B)) is not satisfied.

3

increase in offense level is warranted, while the government's Mem. 4-6 speaks of "loss amount" rather than the guideline term "value of the laundered funds."

But in substantive terms the government has it right in urging that the value of Hosseini's laundered funds--based on more than $15 million in structured deposits and the testimony of witnesses Bambouyani and Rodriguez (Government Mem. 6 n.4) that 50% of those deposits were ascribable to drug dealer customers--is in excess of $7 million, calling for a 20-level increase (see §2B1.1(b)(1)(K)). That then confirms the PSI's calculation of a base offense level of 28 for Hosseini.

As for Obaei, his original Mem. 2 acknowledges his responsibility for more than $3.5 million in structured cash deposits. Although his just-filed supplement seeks to separate that figure entirely from the laundered funds calculation, generating instead a bargain basement figure of $200,000 to $400,000 by looking only at numbers charged in the indictment rather than the proof at trial, that notion is ostrichlike. But on the other side of the coin, in this instance Obaei's PSI treats the entire amount of structured deposits, not 50%, as the "value of laundered funds." It would seem as a matter of consistency that the 50% figure is entirely reasonable (if not generous to Obaei as it is to Hosseini), so that the §2B1.1(b)(1) table would call for the addition of 16 levels (not 18), for a

base offense level of 24 rather than the PSI's 26.  Input would be welcomed on this subject at the sentencing hearing.

As for whether defendants were "in the business of laundering funds," both defendants advance the unpersuasive contention that a negative answer is called for because each car dealership also engaged in legitimate activity (for example, Obaei Mem. 4-5 points to 24 years of what, his counsel says, constituted the legitimate operation of car sales and leasing activity).  But it is of course entirely possible for an activity to comprise both legitimate and illegal activity--indeed, the smarter crook will frequently use the former as a cover to conceal the latter.

Instead the relevant question here is whether the volume and regularity of defendants' illegal activity rises to the level of conducting a business (just as a department store with a major section devoted to the sale of men's clothing, shoes and related goods is accurately viewed as engaging in the "business" of selling such goods).  Based on the overwhelming proof at trial, both defendants were indeed "in the business of laundering funds" during the period charged in the indictment.  Hence each PSI has it right in adding four offense levels under §2S1.1(b)(2)(C).  And that renders moot the possible alternative "sophisticated laundering" addition of two levels under §§2S1.1(b)(2)(B) and 2S1.1(b)(3).

5

Next as to defendants' roles in the respective offenses under §3B1.1, the parties do battle over the number of participants in the offenses and over defendants' own roles as "organizer or leader of a criminal activity" or "manager or supervisor (but not an organizer or leader)." On that score the PSIs assign a four-level increase to Hosseini as an organizer or leader on the premise that five or more participants were involved in his criminal activity and a three level increase to Obaei as a manager or supervisor of criminal activity involving five or more participants.

This Court finds that debate puzzling in light of the guidelines' alternative requirement of an increase if the criminal activity "was otherwise extensive." Whether or not the five-or-more participants requirement was met as to either defendant, it would be extraordinarily difficult to consider the criminal activity of either of them as anything other than "otherwise extensive." That then would appear to call for a four level increase as to Hosseini in all events. As for Obaei and his PSI's inclusion of a three level increase on the premise that he was a "manager or supervisor," his counsel argues instead for the two-level increase specified under §3B1.1(c), and the government has not yet been heard from. That subject is to be addressed at sentencing.

As for the subject of bribery, Hosseini and the government

6

dispute the applicability of that offense to him. But in his PSI's guideline calculation (PSI 17:601) that makes no difference in the end result, for the combined adjusted offense level (PSI 17:606) is a function solely of the money laundering offense calculation. That subject and the proposed obstruction of justice contention of the government (opposed by Hosseini, of course, and not suggested at his PSI 17:572) will be discussed at sentencing along with all other open issues.

Finally, as to this Court's August 16 ruling on the forfeiture issue, this Court had expected that the government was likely to try to salvage, via a post-hoc submission, what it had failed to do the first time around. Hosseini's R. Mem. 9-12 accurately sets out the standards applicable to such motions for reconsideration. If the government's views are to prevail, that must take place at the appellate level, not here in the district court.

This Court is of course well aware that the Supreme Court has already scheduled argument for October 3 (the day before the sentencing hearing in this case) in its Case No. 06-1005, the review on certiorari of our Court of Appeals' decision in <u>United States v. Santos</u>, 461 F.3d 886 (7th Cir. 2006). It is equally aware that our Court of Appeals has differed from all the other circuits that have defined "proceeds" in the money laundering statute as meaning gross receipts, rather than net receipts, from

7

the underlying unlawful activities. But this Court is of course duty bound to follow our Court of Appeals' lead, and if the Supreme Court were to reverse in <u>Santos</u> the issue will have to be sorted out by our Court of Appeals on any appeal from this Court's ruling.

    As stated at the outset, this opinion is not, and is not intended to be, all-encompassing. Instead it has focused on the guideline areas that the parties have identified as in dispute, in an effort to serve as a guide to channel the proceedings at sentencing en route to the ultimate sentencing decision under Section 3553(a).

                                                   _____
                                                 Milton I. Shadur
                                                 Senior United States District Judge

Date:  October 1, 2007