IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,            )
                                     )
            Plaintiff,               )
                                     )
    v.                               )   No.  05 CR 254
                                     )
AMIR HOSSEINI, et al.,               )
                                     )
            Defendants.              )

MEMORANDUM OPINION AND ORDER

In a thinly-disguised effort to "put new wine into old bottles" (Matthew 9:17), the United States has filed a motion for what it characterizes as "clarification" of this Court's earlier forfeiture order in this criminal case, but that actually seeks a material substantive alteration of that order. This Court's oral directive to the parties to provide further submissions made it plain that they should address whether the government's recently-advanced effort is an attempted expansion, rather than an asserted implementation, of the forfeiture charges that accompanied the indictment drafted by the government--charges that were later embodied in a forfeiture order that to this Court's recollection was also drafted by government counsel for issuance by this Court. That oral discussion of the subject concluded with a direction to government counsel to tender a further submission by September 25, with defense counsel to file a further submission by October 2.

Those filings are now in hand. Because the government's

Reply continues to gloss over, or more accurately to ignore entirely, important conceptual distinctions established by the law, this memorandum opinion and order is issued to explain those distinctions once again in the hope (which, like the proverbial hope, springs eternal) that they will finally register with government counsel.

As a starting point, it is constructive to quote the operative language from this Court's earlier opinion (504 F.Supp.2d 376 (N.D. Ill. 2007)) that the government quotes in its recent Reply at 2, 3. First, from 504 F.Supp.2d at 381:

> There is no doubt that the entirety of each defendant's stock and any other ownership interest in Amer Leasing Sales, American Car Exchange and SHO Auto Credit is forfeitable.

Next, following an explanation, that same opinion stated (id.):

> Nothing more is needed to find that all of Hosseini's and all of Obaei's stock and other ownership interests in each of the three Dealerships must be forfeited under Section 1963(a)(2).

Finally, after a review of the evidence against defendants, the opinion stated (id. at 382):

> Forfeiture of each defendant's entire interest in the three Dealerships is clearly appropriate and constitutional, given the gravity of their crime.

All of that language is clear and unambiguous, calling as it does for forfeiture of Hosseini's interests in business entities. But after having quoted this Court's language, government counsel then seeks to emulate the attempts by the alchemists of the

Middle Ages to transmute base metal into gold. Those attempts failed, and so does the government's here. "Stock" in a dealership (meaning a corporate dealership, of course) is not at all congruent with the <u>assets</u> of that corporate dealership, nor is some "other ownership interest" (an obvious reference to ownership in an entity in noncorporate form) congruent with the <u>assets</u> of that enterprise.

Hence the government cannot conflate those conceptually different notions so as to look to the generic description of the forfeited interests as a purported basis for forfeiting real estate that was <u>not</u> specified either in the forfeiture allegations annexed to the indictment or in the judgment that the government tendered to this Court and that this Court then issued to implement those allegations. That then renders inapplicable the government's attempted reliance on Fed. R. Crim. P. 32.2(e), "which permits a court 'at any time' to amend an existing forfeiture order to include property 'subject to forfeiture under an existing order of forfeiture but was located and identified after that order was entered'" (Gov't Reply 2). That argument rests on the false foundation that the lots at issue are "subject to forfeiture under an existing order of forfeiture"--they are not, for the reason already stated.

This opinion has gone directly to the merits, rather than first addressing the issue of standing also raised by government

3

counsel, because that is nothing more than a straw man subject to swift rejection. With defendant Amir Hosseini in prison, the Illinois Rights of Married Persons Act <u>expressly</u> provides that his wife Marzieh Hosseini may obtain judicial authorization "to manage, control, sell or incumber the property of the other [her spouse Amir]" (750 ILCS 65/11).[1] That certainly encompasses the power to seek elimination of the cloud on title created by an unwarranted lis pendens notice.

Accordingly the government is an unauthorized interloper that has clouded the title to the parcels of real estate that have not been the subject of the earlier-declared forfeiture.[2] Accordingly the government is ordered to release the existing notices of lis pendens on those parcels.

Nor may the government tie up the proceeds of any sale of those properties or of Unit 2804 of the property at 25 East Superior Street, Chicago[3] by having such proceeds placed in

---

[1] Illinois law of course defines the parties' property rights. And although the statute speaks of such authorization as being conferred by the circuit court (the state court of original jurisdiction), the just-filed defense Reply at 3 n.2 reports that government counsel had earlier (1) advised that it "routinely removes such state court matters to federal court" and (2) "suggested that Marzieh file any petition under the Illinois Rights of Married Persons Act directly in federal court."

[2] No view is of course expressed here as to the theoretical possibility that forfeiture of that real estate might otherwise have been appropriate.

[3] See Appendix.

4

escrow--one goal of its now-rejected lis pendens notices. As this Court stated orally when that issue was first broached last month, any such diversion of sale proceeds would essentially equate to a prejudgment attachment (see 735 ILCS 5/4-101) without the government's having complied with the requirement prescribed by 735 ILCS 5/4-104 or having posted a bond as required by 735 ILCS 5/4-107. Hence that request by the government is denied as well.

                         _____
                         Milton I. Shadur
                         Senior United States District Judge

Date:  October 6, 2009

Appendix

On September 22 the government released its lis pendens on the 25 East Superior Street property in compliance with this Court's earlier order--an action that led to a distressing confrontation between counsel for the parties. Defense counsel's October 2 Reply at 4 referred to that subject in these terms:

> The Court rejected the Government's objection over the lis pendens notice on 25 E. Superior two weeks ago and ordered the Government to promptly release its lis pendens notice. To Marzieh's knowledge, the Government did not obey the Court's order. Marzieh has not received notice as of the date of filing hereof that the Government either prepared or recorded the required lis pendens release.

In a swift October 5 response captioned "Government's Notice of Filing," government counsel spoke of that as "an unnecessarily snide reply brief," saying that opposing counsel "should have checked the public Cook County Recorder of Deed's [sic] Office," where counsel would have found the release. That criticism turned out to be unwarranted, because later on the same day (October 5) defense counsel responded that he had in fact checked the Recorder's Office website earlier and had found no reference to a release--indeed, an October 5 website printout attached to counsel's response <u>still</u> did not reflect the release.

What accounts for that disparity need not detain the discussion in the text of this opinion, for it is immaterial to this Court's analysis. But what is more important is that there is no call for such a lack of courtesy on the part of government

counsel.  Lawyers--perhaps more than others, because advocacy (and hence disagreement) is their stock in trade--would do well to learn the lesson often repeated by this Court's longtime colleague, the late Judge Abraham Lincoln Marovitz, that the essence of civility is to disagree without being disagreeable.